Good morning, Your Honor. Uh my name is Wayne Shinga on behalf of petitioner. May you proceed? Thank you, Your Honor. So I represent the petitioner seeking review of a BIA's decision affirming an immigration judge's denial of petitioner's motion to reopen and to reissue the immigration judge's written order of removal, which copy was allegedly mailed twice to the petitioner's counsel, the worker, and returned it twice. The petitioner was unable to exercise his right to appeal the immigration judge's removal order to the Board of Immigration Appeal, and he was unable to have a judicial review of the final removal order. The petitioner was unable to have a judicial review of the final removal order. For this case, on behalf of the petitioner, I would request the court to vacate the Board of Immigration Appeal's decision and demand a case for further proceeding. Your Honor, the case is controlled by a recently published 9th Circuit Court's decision in United States v. Rivera-Vargas 21-1037, sir. In Rivera-Vargas, this court held not under Monet and Jones. Due process requires notice in removal proceedings. So could I ask, because this is a new case, the BIA hasn't considered it yet as applied to your client, should we decide what Rivera-Vargas means for your client, or should we send it to the BIA to decide that? What do you think procedurally should happen next? Your Honor, I think this case is governed by regulation CFR, I mean 8 CFR section 1003.37, and also like the government by another regulation. It's 8 CFR 1003.23, subsection B43. If properly applied for the case from the regulation and the previous decided case, no, the BIA should have already demanded a case back to the Immigration Court. I'm sorry, I'm having trouble hearing you. Could you say again what you think should happen? I think even if prior to this new case, the BIA still made mistake and violated the due process right of the petitioner. Of course, I'm sympathetic to your client, particularly because lawyer number one, there's some ambiguity about what address he was having his office at, and we don't have anything in the record that really confirms the sequence of events. So the question I have is, if we were to determine that Rivera-Valdez means that he had a due process right, if the lawyer messed up that they should have sent notice to his personal address, in your view, does that mean that any time notices are returned as undeliverable, that that would prompt an obligation on the part of the Immigration Service to then revert to the individual? What would it mean in terms of practical application? Your Honor, I think the case Monet v. Sincher handled with a band of trust company and trust company. Say the name of that case again, because again, I'm having a little trouble hearing you. Sorry, Monet. No problem, if you could pull the microphone a little closer. The first case cited by Rivera-Valdez, Monet, which is a full case named Monet v. Sincher handled with a bank and trust company, 339 U.S. 306. It was already published long before this new case. This new case is published on September 18 this year, but the name was published long before this case in, sorry, let me go back to the title, 1950. In 1950, the Supreme Court already required the notice must be reasonably calculated in general application to all cases, including immigration case. In June, the Supreme Court again specifically hold that notice is not reasonably calculated under the circumstances when the government knows its measure of service was ineffective and take no additional reasonable step. Well, that raises an additional question. Actually, the language you quote about reasonably calculated to reach the individual, the Ninth Circuit also has reaffirmed that language as far back as 2002. So that's been on the books, so to speak. But if that were the case, do we run into a question of whether that argument should have been raised or was forfeited by not having that in either the appeal to the BIA or the appeal then to the Ninth Circuit? I don't think so, Your Honor, because if you go back to the proceedings, the council already made clear this case governed by two specific regulations. The two specific regulations require, let me go to point number one, ACFR 1003.37 provide a written decision to be served on the parties by personal service, mail, electronic notification, and then regulation provided alternative options for the service. I want to just focus your answer because I understand what you're saying. Statutorily, it seems that the Immigration Service met its statutory obligation because it sent it to council. That's kind of an alternative. But it would seem to me there's a constitutional question here separate from these various CFRs. So that's really, I think, the focus of my question is, was the constitutional issue raised? Yes, Your Honor. I think I will go back to your initial question. I think the case is appropriate to remain the case back to the BIA for further proceeding after the publication of due decision. I think the case is appropriate to remain the case back to the BIA for further proceeding after the publication of due decision. The statute, the regulations say you can choose different options. And it requires the government to take proper steps to determine which option is more practical. So this is consistent with the ordinary case law. But the immigration court didn't do anything. After the 2 returned mail, the 2 mail returned undeliverable. And there is also a mistake. I think we just missed about the finding of facts by the Border Immigration Appeal, BIA, which accused the council of relocating it. But there's no record. So the council actually relocated no clear evidence to support the speculation. And we have 3 returned mail. We have not only have 2 returned mail. The first returned mail is especially problematic. We're quite familiar with the sequence of events on the returned mail to the lawyer. You might want to save time for rebuttal. Would you like to save some time for rebuttal? I will go forward and finish it if you allow me to. So the first returned mail actually had a different language than 2 subsequently returned mail. The first returned mail saying that returned to sender, no such number, which means that USPS did not recognize the address as valid. And they had a problem to serve because of the address issue. Although the address is already used for 2 years from 2020 to 2022. So you've used up your time. I think we should hear from the government. Thank you. Thank you.  Good morning, your honors. John Bailey with the Department of Justice for the respondent. So the panel issued an order asking us to address the impact of the circuit's recent en banc decision in Rivera-Valdez, as well as whether the petitioner's due process argument had been forfeited. I think one of those questions is easier than the other. So I'm going to take those questions out of order. And I'd like to start with forfeiture. So the specific due process claim here is, well, it would be under Rivera-Valdez whether the agency's failure to take additional steps after receiving return certified letters violated due process. So I think the question for the panel is whether that claim, was that teed up for the agency such that the panel now can pass on it. And so when thinking about forfeiture, it's basically, was it enough that they were just on notice that they could even get to this issue themselves? And I think when we look at the brief that was filed to the BIA, the due process issue, I mean, even if you squint, it just can't be found here. And I'm looking at the starts on page 16 of the administrative record, and it goes to page 2022. The brief, it really focuses on mistakes by the post office and a lack of mistake by the petitioner. But it doesn't assert that the agency erred. It doesn't say that the agency needed to do more. And the key facts as far as to whether the agency did need to do more, the returned letters, that only gets a sentence in the statement of facts. It just notes that the, quote, the envelope containing the order was not delivered, but it was returned to the immigration court by error. Well, so if Rivera-Valdez had already been decided when this was filed at the BIA, don't these facts state a claim that could be understood within Rivera-Valdez if the BIA had known about Rivera-Valdez? Well, I think one thing that's tricky, Your Honor, I mean, is they only mention just the one returned letter. I mean, that fact gets, it's pretty much buried in this brief. I don't think there's any emphasis on the point that, like, look, the agency had this information. Out of fairness, they should have done more. That's not what the thrust of the due process argument was about. It was about, well, the petitioner wasn't at fault, or it was. It does say that they never received the removal order. They found out when it was too late. I mean, isn't that enough to show that this return mail problem led to lack of notice? Sure, I mean, I think the agency, the BIA, would have understood that at a very high level, this is an issue of notice. But I think as to whether the petitioner was arguing that the agency violated due process by not itself taking an affirmative step, I think that claim is what is forfeited here. But even if it were forfeited, wouldn't we have discretion here to hear this constitutional argument? And if so, would it make sense to remand and let the BIA sort out, in this context, what Rivera-Valdez means? Well, Your Honor, I think for this particular claim, because this is a procedural due process claim that the agency itself could have dealt with, I don't think that there would be an exception to the exhaustion requirement here. But that said, if the court concludes that this is either not wavered or it has, in its discretion, can reach this issue, I think it would be most appropriate to remand to the BIA so that the BIA can apply Rivera-Valdez to the facts of this case, which due process notice, as a general matter, is fact-specific. And then I think as it applies to the petitioner's case, particularly so, as you noted, there's some ambiguity in the record as to exactly what happened with sequencing. And so it seems like it would be most appropriate for the BIA to apply Rivera-Valdez if this court disagrees with the forfeiture position. And it would be the BIA considering whether to order the IJ to reissue, to restart the time to appeal, or basically just to have the BIA allow another appeal if the BIA decides that due process was violated? Yes, I think the latter. The latter. So the BIA, right, so it doesn't need, because the IJ doesn't need to change anything really. It's really the BIA needs to decide whether to allow an appeal and that would be within the BIA's power if the BIA decided there had been a violation under Rivera? Yes, that's my understanding, Your Honor. I'm happy to answer any other questions on the forfeiture of Rivera-Valdez if the court has any. I don't think so. Thank you very much. Thank you both sides for the arguments. This case is submitted.
judges: McKEOWN, FRIEDLAND, SUNG